# In the United States Court of Federal Claims

No. 14-518
(Filed: March 2, 2015)

| | | |
|---|---|---|
| JEM TRANSPORT, INC., | ) | **Breach of Contract; Partial Motion** |
| | ) | **to Dismiss; Partial Motion for** |
| Plaintiff, | ) | **Summary Judgment; Contract** |
| | ) | **Formation; Offer and Acceptance;** |
| v. | ) | **Authority to Contract on Behalf of** |
| | ) | **the United States; Contracts** |
| THE UNITED STATES, | ) | **Disputes Act; Demand of Sum** |
| | ) | **Certain** |
| Defendant. | ) | |
| | ) | |
| | ) | |

*Matthew R. Simring*, Cooper City, FL, for plaintiff.

*Joshua A. Mandlebaum*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Joyce R. Branda*, Assistant Attorney General; and *Robert E. Kirschman, Jr.,* Director, and *Deborah A. Bynum, Assistant Director,* Commercial Litigation Branch, for defendant.

**OPINION**

**FIRESTONE**, *Judge*.

Plaintiff JEM Transport, Inc. ("JEM") brings this breach of contract case against the defendant United States Postal Service ("USPS" or "government") alleging that USPS failed to (1) recognize an alleged contract extension between the plaintiff and USPS for mail delivery and (2) pay plaintiff for work allegedly performed under the original contract. According to the complaint filed on June 17, 2014, plaintiff and USPS had agreed to extend plaintiff's contract from its expiration date of April 30, 2012, to June 30, 2015. JEM alleges that when JEM's president signed a USPS document that

1

would have renewed JEM's contract, JEM accepted the government's offer and created a binding contract, notwithstanding the fact that the USPS contracting officer never countersigned the document.  In the alternative, plaintiff argues that the parties' actions with regard to an extension created a contract implied-in-fact.   Plaintiff alleges that when the government subsequently treated JEM's contract as expired on May 1, 2012, the government was in breach of that contract.  In addition, plaintiff claims that USPS has not paid JEM all the money USPS owes to JEM under the initial contract.

    The government has filed a motion for partial summary judgment and partial dismissal for lack of jurisdiction.  See Def.'s Mot. for Partial Dismissal and for Partial Summ. J., ECF No. 6 ("Def.'s Mot.").  The government moves for summary judgment on JEM's breach of contract claim arising from the alleged contract extension, arguing that the claim fails as a matter of law because the parties never entered into either an express or implied-in-fact contract to extend JEM's contract to June 2015.  The government asserts that a contracting officer's signature was required to create a binding contract and, since he never countersigned the modification documents, no contract for an extension was ever formed.  Further, the government argues that plaintiff's claim for unpaid payments under the initial contract must be dismissed because JEM did not first file a valid demand for payment with the contracting officer as required by the Contract Disputes Act ("CDA"), 41 U.S.C. § 7103(a), and thus the court lacks jurisdiction.

    In its opposition, plaintiff argues, among other things, that the government's motion should be denied as premature because JEM has not had an opportunity to seek discovery.  Plaintiff claims that it needs discovery to support its theory that USPS

contracting officer did not wish to extend JEM's contract because of bias against plaintiff. Pl.'s Opp. to Def.'s Mot. for Partial Dismissal and for Partial Summ. J., ECF No. 9 ("Pl.'s Opp.").

For the reasons stated below, the court now **GRANTS** defendant's motion for partial dismissal and partial summary judgment in full. The court finds that plaintiff's signature alone was not sufficient to extend its contract with USPS when the undisputed facts show that the contract required a person with authority to bind the government to countersign the documents before a contract was formed. Accordingly, the only contract between the plaintiff and the USPS expired on April 30, 2012, so the government cannot be liable for a breach of contract alleged to occur after that date. The government is therefore entitled to summary judgment on JEM's breach of contract claims arising from an alleged contract extension.[1] Further, the court finds that additional discovery on this point would be futile. JEM did not have a right to a renewal of its contract beyond the contract's expiration date, and even if the plaintiff could show animus on behalf of the contracting officer, that would not create a contract between JEM and USPS. Finally, the court agrees with the government that it does not have jurisdiction over the plaintiff's claim that USPS failed to pay JEM the money it owed under the contract. The letter JEM sent to the USPS alleging that USPS owed money to JEM did not include the sum of

---

[1] Plaintiff's complaint included a primary estoppel theory of recovery; however, in its opposition, plaintiff agrees that this court does not have jurisdiction over its promissory estoppel claim. Pl.'s Opp. 4 n.1. Therefore, the court does not address this argument in its opinion.

money that JEM alleged USPS owed, as required by the relevant regulations, see 48 C.F.R. § 52.233-1(c).  Therefore, this claim must be dismissed.[2]

I.  STATEMENT OF FACTS

Though the parties disagree about certain facts in this case, a large part of the record is undisputed.  USPS enters into Highway Contract Route ("HCR") agreements commissioning private entities to deliver the mail for specified routes.  In September of 2008, USPS entered into HCR 331M9 ("the contract") with JEM.  The contract was for JEM to deliver mail from several USPS facilities in southern Florida.  See generally

---

[2] In its complaint, briefing papers, and the affidavit from JEM's president supporting JEM's opposition to the government's motion, JEM demands trial by jury and repeatedly refers to a potential future jury trial.  However, as the government notes, the Court of Federal Claims operates without juries.  By statute, judges of this court, not juries, are the factfinders.  See 28 U.S.C. § 2503(c) ("The judges of the Court of Federal Claims shall . . . examine witnesses, receive evidence, and enter dispositive judgments." (emphasis added)).  The Federal Circuit has confirmed that "[b]y filing in the Court of Federal Claims, one waives the right to a jury trial." Arunga v. United States, 465 F. App'x 966, 967 (Fed. Cir. 2012) (citing James v. Caldera, 159 F.3d 573, 589-90 (Fed. Cir. 1998)).  Though JEM argues that the right to a jury trial is a "fundamental constitutional right," Pl.'s Memorandum Regarding its Jury Trial Demand, ECF No. 17, at 2, the Supreme Court has definitively found that the "Seventh Amendment right to a jury trial does not apply in actions against the Federal Government." Lehman v. Nakshian, 453 U.S. 156, 160 (1981).
   Plaintiff argues that USPS is "not the federal government," and maintains that JEM is entitled to a jury trial. Pl.'s Memorandum Regarding its Jury Trial Demand 2.  Plaintiff relying on cases against independent agencies such as the Tennessee Valley Authority, see Algernon Blair Indus. Contractors, Inc. v. TVA, 552 F. Supp. 972, 974 (M.D. Ala. 1982), and the Red Cross, see Doe v. Am. Nat. Red Cross, 845 F. Supp. 1152, 1158-59 (S.D.W. Va. 1994)).  However, the Federal Circuit has found that for the purpose of Court of Federal Claims jurisdiction, USPS is a governmental entity.  See Slattery v. United States, 635 F.3d 1298, 1308 (Fed. Cir. 2011) (citing Butz Engineering Corp. v. United States, 499 F.2d 619 (Ct. Cl. 1974)).
   In the alternative, plaintiff asks the court to transfer this case to the United States District Court for the Southern District of Florida.  However, under the Tucker Act, federal district courts lack jurisdiction over plaintiff's claim because plaintiff is bringing a contract suit against the federal government seeking over $10,000 in damages.  See Suburban Mortgage Associates, Inc. v. U.S. Dep't of Hous. & Urban Dev., 480 F.3d 1116, 1126 (Fed. Cir. 2007).  Because this court is the only court with jurisdiction over plaintiff's claim, the case will not be transferred.

Def.'s Mot. A8-87.  The contract was initially set to expire on March 11, 2011, and contemplated a potential renewal upon "mutual agreement of the parties."  Id. A179.

In January of 2011, USPS sent JEM an "Inquiry Concerning Renewal of Transportation Services Contract."  Pl.'s Opp. Ex. A.  The Inquiry was "sent only to determine whether or not [JEM is] interesting in renewing [its] contract" to extend until June of 2015.  Id. at 1.  JEM indicated that it would be interested in the renewal.  Id. at 2.  However, before the contract could be renewed, USPS initiated a process known as an "Article 32 proceeding," in which USPS "evaluates the need to subcontract work that could be performed by the bargaining unit."  Def.'s Mot. A2.  The Article 32 evaluation had the potential to affect the routes covered by JEM's contract.   USPS and contractors typically enter into these types of contracts for four-year terms, but until the Article 32 process was completed, the parties were only able to enter into short-term contract extensions.  On March 23, 2011, the contract was renewed to an expiration date of October 31, 2011.  See Def.'s Mot. A88-124.   On October 25, 2011, the contract was renewed to an expiration date of April 30, 2012, see Def.'s Mot. A125-28.

On April 5, 2012, Keith Harris, the contracting officer for JEM's contract with USPS, informed his staff that the Article 32 process relating to JEM's contract had concluded, and as a result, the contract "could now be extended."  Def.'s Mot. A3.  On April 6, 2012, Sheila Mobley, a Purchasing and Supply Management Specialist at USPS, sent JEM Transport documents which would have modified the contract to extend until June 30, 2015.  Def.'s Mot., Decl. of Keith Harris ("Harris Decl.") ¶ 10; Pl.'s Opp., Decl. of Joseph Melchiori ("Melchiori Decl."), ¶ 30-31.  The email from Ms. Mobley requested

that JEM's president, Joseph Melchiori, sign the document attached to the email and stated that "[t]his contract has been renewed full term." Pl.'s Opp. Ex. C at 1. Mr. Melchiori signed the document and returned it to USPS that same day. Melchiori Decl. ¶ 30-31. However, Mr. Harris never countersigned the extension documents.

On March 23, 2012 the USPS Administrative Official ("AO") sent JEM a request for service improvement letter regarding what the AO considered to be JEM's unsatisfying performance. Harris Decl. ¶ 9; Def.'s Mot. A135-36; A148. On April 3, 2012, JEM emailed Mr. Harris a letter it had written in response to the AO's letter, in which JEM denied that it was performing poorly and asked for an explanation of the "Unsatisfactory Service" designation. Harris Decl. ¶ 10; Def.'s Mot. A136. On April 10, Mr. Harris learned that one of JEM's trailer's had broken apart on the expressway. Harris Decl. ¶ 12; Def.'s Mot. A155. The employee who inspected the trailer wrote in an email that the truck had several bald tires, and that the sidewall of the trailer was "rotten and separated from the lower rail." Def.'s Mot. A148. The inspector told Mr. Harris that in his opinion, the vehicle "should not have been on the road at all." Id. The next day, Mr. Harris received an email stating that the brakes on one of JEM's trailers had locked, preventing JEM from using the truck and affecting JEM's ability to deliver the mail. Harris Decl. ¶ 13; Def.'s Mot. A154.

At this point, the parties' respective versions of the facts diverge. The government contends Mr. Harris never countersigned the agreement because JEM's performance had been declining and USPS preferred to let JEM's contract expire by its own. On April 10, 2012—the day that Mr. Harris learned about the trailer breaking apart—Mr. Harris claims

6

that he spoke to Mr. Melchiori, about what Mr. Harris classified as a "catastrophic equipment failure, as well as other problems with JEM Transport's equipment, including a trailer catching on fire, and another trailer having broken doors." Harris Decl. ¶ 12. Mr. Harris further attests that the next day—the day he received the email describing JEM's second equipment failure, and five days after JEM returned the extension documents to USPS—he spoke to Mr. Melchiori once again regarding JEM's contract. Mr. Harris states that he told Mr. Melchiori that he "intended to issue JEM Transport a cure notice, and that if the service deficiencies were not resolved in the time stated in the cure notice, I would consider terminating the contract for default." Id. ¶ 13. According to Mr. Harris, "Mr. Melchiori informed me that he wanted to avoid a termination for default, and requested a release from the contract. I agreed, and we mutually decided to let the contract expire on April 30, 2012." Id.

That same afternoon, Mr. Harris sent an email to Mr. Melchiori to "memorialize" the conversation. Harris Decl. ¶ 14; see Def.'s Mot. A195. The email read as follows:

> Joey,
> In our conversation earlier today, you informed me that you wanted to seek a release from HCR 331M9. As stands, the contract is scheduled to expire on April 30, 2012; I will not finalize the outstanding contract term modification activity.
> The contract will be allowed to expire effective close of business April 30, 2012. Performance of service during the remaining days of the contract remains of great importance to the Postal Service.

Def.'s Mot. A195. Mr. Harris states that after his conversation with Mr. Melchiori, he decided to issue the cure notice even though the contract would soon expire because he

7

"did not trust that JEM Transport would maintain service through the remainder of the contract."  Harris Decl. ¶ 13.

Mr. Melchiori "categorically" denies that he ever agreed to let the contract expire. Melchiori Decl. ¶ 40.[3]  In fact, Mr. Melchiori states that on May 1, 2012, JEM's trucks "timely reported for duty but the Post Office refused to load the trucks."  Id. ¶ 32.  Only then, he attests, was he "told personally that the contract had been terminated . . . ."  Id.  JEM argues that this case is "really about a bad contracting officer and a good vendor."  Pl.'s Opp. 12.  Though JEM does not deny that the incidents regarding its equipment occurred, JEM maintains that overall, JEM had been performing very well and that the mechanical issues it experienced were well within the norm for mail delivery contractors. Pl.'s Opp. 11.  According to JEM, Mr. Harris was exaggerating any problems so that he would have a pretext for terminating the contract.   Mr. Melchiori explained that because his company "lost its largest government contract, JEM has closed its doors."  Id. ¶ 45.

On July 18, 2012, Mr. Melchiori emailed a letter to Mr. Harris asking him why the contract had been "terminated," and asking why JEM was not "invited to bid" on any of the three contracts that covered JEM's former routes beginning on May 1, 2012, which USPS had awarded to three other companies.  Def.'s Mot. A199.  On August 2, 2012, Mr. Harris wrote back explaining that he had allowed the contract to expire, as discussed in the parties' conversation on April 11, 2012.   Harris Decl. ¶ 18; Def.'s Mot. A202.

---

[3] JEM has not denied receiving Mr. Harris's April 11, 2012 email which Mr. Harris claims memorializes their conversation.

On April 10, 2013 JEM sent a letter to Mr. Harris claiming that USPS had not paid JEM all the money it owed under HCR 331M9.  In the letter, JEM claims that USPS had failed to pay on "late slips" that JEM submitted for the months of November and December of 2010; January, July, August, September, and December of 2011; and January of 2012.  Pl.'s Ex. E.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule of the Court of Federal Claims ("RCFC") 56(a), "summary judgment is appropriate 'when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Jacqueline R. Sims, LLC v. United States, No. 2014-5076, 2015 WL 328224, at *4 (Fed. Cir. Jan. 27, 2015) (quoting RCFC 56(a)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  A fact is material if it could "affect the outcome of the suit under the governing law."  Id.

### B. USPS Never Agreed to Extend JEM's Contract to June 2015

Plaintiff argues that when Mr. Melchiori signed the documents Ms. Mobley sent to JEM on April 6, 2012, JEM accepted the government's offer to extend HCR 331M9 until 2015, and thus created a contract.  The government counters that Ms. Mobley did not have authority to enter into a contract modification, and that sending the documents to JEM was, at best, an invitation for JEM to make an offer.  The government maintains that

9

there was no contract because the contracting officer, the only person authorized to bind the United States, never signed the documents on the behalf of the government.

In order to establish the existence of a contract with the United States, a plaintiff must establish four elements: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract." Vasko v. United States, 581 F. App'x 894, 897 (Fed. Cir. 2014) (quoting Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). The burden is on the plaintiff to prove the existence of the contract. Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012) (citing Hanlin v. United States, 316 F.3d 1325, 1328 (Fed .Cir. 2003)).

JEM argues that "in terms of fundamental principles of contract law, a contract was formed on April 6, 2012 between JEM and the Post Office." Pl.'s Opp. 7. JEM characterizes the unsigned documents Ms. Mobley sent to it regarding an extension of HCR 331M9 as an offer, and Mr. Melchiori's signature as an acceptance. However, it is clear from the record that USPS did not make an offer. "A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1050 (Fed. Cir. 2001) (quoting Restatement (Second) of Contracts § 26 (1981)).

According to the comments to the Restatement, it is "common" to use "promissory expressions or words of assent in unsigned documents or letters where the document is intended not as an offer but only as a step in the preliminary negotiation of terms . . . ."

Restatement (Second) of Contracts § 26, cmt e.  Here, it is undisputed that the USPS sent unsigned documents to JEM, with a blank space left for the contracting offer's signature.  The signature block is below a heading stating "The parties have caused this amendment to be executed, effective [on specified date]."  Def.'s Mot. A145.  Accordingly, it was clear that USPS had not yet agreed to the extension when it sent the documents to JEM.

      The facts of this case are parallel to the facts in <u>Neenan v. United States</u>, 112 Fed. Cl. 325 (2013) <u>aff'd</u> 570 F. App'x 937 (Fed. Cir. 2014).  In that case, the court found that no contract was created when the government forwarded an extension to a lease agreement to the plaintiff, which the plaintiff signed and returned to USPS, but which the contracting officer never countersigned.  <u>Id.</u> at 330.  The court found that forwarding the proposed lease extension "is plainly not, in itself, an offer.  It merely forwarded the draft agreement."  <u>Id.</u>  The plaintiff in <u>Neenan</u> the asserted that the employee who forwarded the purported extension to the plaintiff assented to the bargain when she told him "It's a deal."  <u>Neenan</u>, 112 Fed. Cl. at 330.  The court nevertheless noted that it "cannot ignore the fact that the enclosed draft lease was not signed" and found that "[o]nly after the contracting officer's final review of the lease and proof of authority, followed by a signature, would there be final approval."  <u>Id.</u>  In this case, JEM points to the fact that the email from Ms. Mobley statement in her April 6, 2012 email that "[t]his contract has been renewed full term."  <u>See</u> Pl.'s Opp. Ex. C at 1.  Nevertheless, as in <u>Neenan</u>, USPS sent the document to JEM with the signature block for the contracting officer left blank.  Therefore, JEM "ha[d] reason to know that [USPS] does not intend to conclude a bargain

until [it] has made a further manifestation of assent." Linear Tech., 275 F.3d at 1050 (citation omitted).

In addition, because a contract with the government can only be formed if an agent with actual authority to bind the government agrees to do so, see Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344 (Fed. Cir. 2007) (noting that "apparent authority of the government's agent . . . not sufficient; an agent must have actual authority to bind the government." (citation omitted)), merely forwarding the renewal documents to JEM was not an offer. Those seeking to enter into a contract with the federal government are "responsible for 'accurately ascertain[ing] that he who purports to act for the Government stays within the bounds of his authority.'" Vasko, 581 F. App'x at 897 (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)). As the contracting officer for HCR 331M9, Mr. Harris was the only person with actual authority to bind the government to a modification of the contract. See 39 C.F.R. § 601.104 ("Only the Postmaster General/CEO; the Postal Service's vice president, Supply Management; contracting officers with written statements of specific authority; and others designated in writing or listed in this part have the authority to bind the Postal Service with respect to entering into, modifying, or terminating any contract . . ." (emphasis added)).

But Mr. Harris did not sign the extension documents, nor did he send them to JEM.[4] The purported offer was sent by Ms. Mobley, a Contract Transportation

---

[4] The fact that Mr. Harris and Mr. Melchiori disagree as to whether there was an agreement to let HCR 331M9 expire is immaterial. Without the contracting officer's signature on the extension contract, JEM is unable to show an ambiguous offer and acceptance. See Restatement (Second) of Contracts § 26. As noted above, a document may show a "willingness to enter into a bargain"

Specialist. Ms. Mobley does not have a Contracting Officer's warrant, Harris Decl. ¶ 11, and as such, does not have the authority to agree to contract renewals and extensions. See Neenan, 112 Fed. Cl. 327, 332 (finding that a USPS Real Estate Contract Specialist lacked actual authority to bind the government). Nor does fact that Mr. Harris knew Ms. Mobley forwarded the draft agreement mean that USPS ratified the contract. In P & K Contracting, Inc. v. United States, the court rejected the plaintiff's argument that a contract was ratified when an employee without contracting authority copied the contracting officer on the email to the plaintiff containing the purported offer. 108 Fed. Cl. 380, 390-91 (2012), aff'd 534 F. App'x 1000 (Fed. Cir. 2013). The court noted that, in order for the offer to be binding on the government, the contracting officer "would have had to ratify any representations" by the other employee, and found that "silence and lack of response from the [contracting officer] forecloses any ratification." Id. at 390 (citing Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433-34 (Fed. Cir. 1998))

Therefore, as the government argues, USPS's decision to send the documents to JEM was not a valid offer because the documents require the signature of a person authorized to bind the government. Instead, the documents represented "a step in the preliminary negotiation of terms . . . ." Restatement (Second) of Contracts § 26. Because the government never accepted JEM's offer by signing the remaining blank signature

---

but "it is not an offer" where the person making it, "does not intend to conclude a bargain until he has made a further manifestation of assent." Id. It is for this reason that additional discovery regarding USPS' alleged mistreatment of JEM is immaterial. See fn. 3.

box, no contract was formed.[5] JEM may have wished and expected to renew its initial contract for another four years after the end of the initial term once the Article 32 process had been resolved. However, JEM had no right to an extension beyond the expiration date of the contract it had signed.[6]

### C. Further Discovery Would be Futile

As noted above, JEM argues that summary judgment is premature. JEM asks for an opportunity to seek discovery on what it asserts are disputed issues of material fact. Specifically, JEM argues that through discovery it can establish that Mr. Harris lacks credibility, and therefore the alleged issues relating to JEM's performance were merely a pretext to end the relationship. JEM also alleges that Mr. Harris must have improperly granted the contract to JEM's successors because so little time had passed between the time Mr. Harris purportedly decided to let the contract expire on April 11, 2012, and the time the new contractors began work on May 1, 2012. JEM states that they were

---

[5] At the very least, Mr. Harris's decision not to sign the contract makes it impossible for JEM to show "lack of ambiguity in offer and acceptance." Vasko v. United States, 581 F. App'x at 897 (citations omitted). In Emeco Industries, Inc. v. United States, the Court of Claims found that not only must both parties sign the document to create a formal contract, but that the acceptance by the second signing party must be communicated to the offeror. 202 Ct. Cl. 1006, 485 F.2d (1973). In that case, the plaintiff had filled out, signed, and submitted the solicitation to the contracting officer. Id. at 656. The contracting officer countersigned the agreement, but never sent the signed document to the plaintiff. Id. Nevertheless, the court concluded that "the mere signing of plaintiff's offer by defendant's contracting officer did not result in a contract" because the second party must communicate the acceptance in order to form a contract. Id. at 657.

[6] The elements are the same for implied-in-fact and express contracts. See Kam-Almaz, 682 F.3d at 1368 (quoting Hanlin, 316 F.3d at 1328).D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003) (citing Lewis v. United States, 70 F.3d 597, 600 (Fed. Cir. 1995)). Consequently, under either an express contract theory or an implied-in-fact contract theory, JEM is required to demonstrate that a person with authority to bind the government assented to the contract. Because JEM cannot show that a person with authority either entered into a four-year contract with JEM or agreed to extend its contract to a full four-year term, JEM also cannot satisfy the requirements of an implied-in fact contract.

unaware of any bidding process and thus were unable to submit a bid for the contract. The government argues that deferring ruling on this motion would be futile, because JEM has not challenged any of the material facts in this case, namely, the fact that the contracting officer did not sign the modification agreement.

The court agrees with the government. Under RCFC 56(d), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it [or] allow time to obtain affidavits or to take discovery . . . ." RCFC 56(d)(1)-(2). In discussing RCFC 56(d)'s counterpart under the Federal Rules of Civil Procedure, the Federal Circuit explained that a court should grant a request under this rule only if "the discovery sought would be essential to opposing summary judgment and 'relevant to the issues presented by the motion for summary judgment.'" Baron Servs., Inc. v. Media Weather Innovations LLC, 717 F.3d 907, 912 (Fed. Cir. 2013) (quoting Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir.1988)). Where there has not yet been an initial opportunity for discovery, the "strict showing of necessity and diligence that is otherwise required for a Rule [56(d)] request for additional discovery . . . does not apply." Metro. Life Ins. Co. v. Bancorp Servs., LLC, 527 F.3d 1330, 1337 (Fed. Cir. 2008) (citing Exigent Tech. Inc. v. Atrana Solutions, Inc., 442 F.3d 1301, 1311 (Fed. Cir. 2006); Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 530-31 (8th Cir. 1999)). Even when there has not been an opportunity for discovery, the court may deny a motion under Rule 56(d) when "there is no reason to believe that [additional discovery] will lead

to the denial of a pending motion for summary judgment. Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996) (citation omitted).

The court finds that discovery is not necessary because JEM cannot show how the discovery JEM seeks would be "relevant to the issues presented by the motion for summary judgment." Baron Services, 717 F.3d at 912. The fact that Mr. Harris and Mr. Melchiori disagree as to whether there was an agreement to let HCR 331M9 expire is immaterial. Without the contracting officer's signature on the extension contract, JEM is unable to show an unambiguous offer and acceptance to extend the contract beyond the April 30, 2012 expiration date. As noted above, a document may show a "willingness to enter into a bargain" but "it is not an offer" where the person making it, "does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts § 26. The undisputed evidence establishes that the contract expired on April 30, 2012 and no one with authority extended the JEM contract. JEM has not identified any evidence which could put into doubt the fact that Mr. Harris never signed the contract extension JEM seeks to enforce. Moreover, Mr. Harris stated in a contemporaneous email to Mr. Melchiori that Mr. Harris would not agree to extend the contract. See Def.'s Mot. A195.[7] In such circumstances, there is nothing JEM could

---

[7] The court understands that JEM believed that it would receive an extension to include a full four-year term once the Article 32 process was resolved. The court also recognizes that this belief was not unfounded; it was reflected in Ms. Mobley's email to JEM. However, that understanding was not reflected in the binding contract in force at the time this dispute arose. That contract, which JEM and Mr. Harris signed, granted JEM a contract to deliver mail only until April 30, 2012. That contract was renewable by "mutual agreement of the parties." Def.'s Mot. A179. Therefore, by the terms of the contract, JEM had no right to a continuation if USPS did not agree. Because USPS and JEM had never entered into a four-year contract, but only

uncover in discovery that would allow the court to conclude that JEM had a contract with USPS beyond April 30, 2012. Accordingly, discovery would be futile and does not bar the court from granting summary judgment to the government on JEM's breach of contract claim based on an alleged contract after April 30, 2012.[8]

### III. THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS FOR "LATE SLIP" PAYMENTS

JEM asserts that the government breached its contract by failing to pay JEM for certain "late slips" due for the months of November and December of 2010; January, July, August, September, and December of 2011; and January of 2012. USPS's agreements with contractors, including JEM, obligated USPS to compensate a contractor for any delays caused by USPS in providing the mail to the contractor for delivery. When a delay occurs, a USPS employee provides the contractor with a "late slip" detailing the date and length of the delay. The contractor may then submit the slip to USPS for reimbursement for the lost time.

On April 10, 2013 it sent a letter to the contracting officer requesting payment on late slips for each of the months listed in the complaint. Pl.'s Opp. Ex. E. Two payment slips attached to the letter show the amount USPS paid JEM on late slips for nine months

---

incremental contracts for short periods, the government was free to end its relationship with JEM when the last contract period expired.

[8] JEM's allegations regarding the contracting officer's bias in connection with the procedure USPS must have used to replace JEM (which is not an issue in this case) could have been raised in a bid protest action, and, if proven, may have resulted in a reversal of USPS's decision to contract for mail service with other companies. See Galen Med. Associates, Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004) (agency's award of a contract can be reversed if the award is "shown to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 28 U.S.C. § 1491(b)(4))).

in 2011 and 2012.  Id.  However, there is no indication from the plaintiff's letter or its attachments as to how much the plaintiff believes USPS still owes for months not reflected in the payment slips.  The amount USPS paid JEM on late slips varies widely from month to month (from as low as $370 to as much as $9,525).

The government maintains that JEM's late-slip claims are barred because the purported claim to the contracting officer does not demand "a sum certain," as required by the CDA.  The CDA requires that a contractor present a valid claim to the contracting officer and show that the claim was denied before filing suit in this court.  See, e.g., J.P. Donovan Const., Inc. v. Mabus, 469 F. App'x 903, 906 (Fed. Cir. 2012) (noting that the "jurisdictional prerequisites to any appeal under the CDA are that the contractor must submit a proper claim" and that "the contractor must have received the contracting officer's final decision on that claim." (quoting M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (internal quotation marks omitted))).  The CDA is a waiver of sovereign immunity, and as such, its requirements must be "strictly construed in favor of the sovereign."  M. Maropakis, 609 F.3d at 1329 (Fed. Cir. 2010) (quoting Orff v. United States, 545 U.S. 596, 601-02 (2005).  Because the CDA does not clearly define the elements of a valid claim, see 41 U.S.C. § 1703, the courts look to the relevant Federal Acquisitions Regulations ("FAR") for guidance, see J.P. Donovan, 469 F. App'x at 906.  The FAR states that a "claim" under the CDA "means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." 48 C.F.R. § 52.233-1(c).

The court agrees with the government that plaintiff's April 10, 2013 letter is inadequate because the letter did not include a demand for a sum certain.  In order to satisfy the sum certain requirement, a party must demonstrate "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  Northrop Grumman Computing Sys., Inc. v. United States, 709 F.3d 1107, 1112 (Fed. Cir. 2013) (quoting Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987).  Though JEM's letter provided adequate notice of the basis of the claim, the letter gave no indication as to the amount alleged to be due.  In J.P. Donovan, the Federal Circuit found that the plaintiff's CDA claim failed to state a sum certain when the plaintiff's submission to the contracting officer gave only an estimate of the amount it believed was owed, used qualifying language such as "approximately" to describe the amount he was seeking, and did not include supporting documents that would have allowed the contracting officer to substantiate the claim.  J.P. Donovan, 469 F. App'x at 908.  Therefore, "the claimed amount was unascertainable."  Id.

   In this case, plaintiff provided even less information in its purported CDA claim. Plaintiff's letter did not even include an estimate of the money owed.  While plaintiff did provide the amounts USPS paid to it on late slips for the months it was paid, the amounts per month varied so greatly that the contracting officer would not have been able to calculate what was owed to plaintiffs for other months, see id. (noting that "sum certain" requirement is met "if the contracting officer can determine the amount claimed by a

simple mathematical calculation."). Therefore, because plaintiff failed to submit a valid claim to the contracting officer, the court must dismiss this claim for lack of jurisdiction.[9]

## IV. CONCLUSION

For the foregoing reasons, the government's motion for partial summary judgment and for partial dismissal is **GRANTED**. The Clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Judge

---

[9] JEM may be able to cure the jurisdictional defect with respect to this claim. The statute of limitations for submitting a claim is six years, 41 U.S.C. § 7103(a)(4)(A), and JEM is alleging that USPS owes it money on late slip obligations that accrued between 2010 and 2012. Therefore, JEM may be able to submit a new claim including the required information.